## Inhabitants of THOMASTON *vs.* Inhabitants of ST. GEORGE.

If a woman resides in a town with her husband for two years, when he dies, and she continues to reside therein for the three succeeding years, unmarried, she gains no settlement in the town by such residence.

In determining whether a pauper has gained a settlement by a residence of five years together in one town, *it was held*, that the jury are to gather the intentions of the pauper, as to a change of domicil, from his declarations, which are not conclusive evidence on that point, and from his acts, all taken in connection.

*Dix Island* is included within the limits of the town of *St. George.*

EXCEPTIONS from the C. C. Pleas, REDINGTON J. presiding.

Assumpsit for supplies furnished to one *Eunice Allen,* a pauper, whose legal settlement was alleged to be in the town of *St. George.* The question at issue was, where was the settlement of the pauper? The defendants introduced evidence to prove that the pauper and her husband, *John Allen,* since deceased, lived and had their home on *Dix Island* on the 21st of *March,* 1821. They also contended, that *Dix Island* was within the town of *Thomaston* at that time and since ; and the plaintiffs insisted that the island was within the town of *St. George.* The facts bearing on this question are sufficiently stated in the opinion of the Court.

The defendants also contended, that if *Dix Island* was not a part of *Thomaston,* but belonged to *St. George,* still the pauper had acquired a settlement in *Thomaston* by five years continued residence there, since the *stat. March* 21, 1821. It appeared from the testimony given in the bill of exceptions, that the pauper with her husband came to reside within the acknowledged limits of *Thomaston* in the latter part of the year 1829, and both continually resided there until the death of the husband in *February,* 1832. There was no evidence to show a continued residence of five years in *Thomaston* by the pauper after the death of the husband. The plaintiffs contended, that even if the time she lived in *Thomaston* as a married woman was to be included as part of the five years, but which they insisted should not be, still she had not resided there five years together. On this point it was testified, that within five years from her first living in *Thomaston* with her husband,

and after his death, in *May*, 1833, "she again left *Thomaston*, taking her bed with her, and leaving no effects behind, for one of the islands where her son resided, declaring that she never intended to return there again ; that she remained on said island until *July*, 1835, when she again came to *Thomaston*, and then remained there sometime, and afterwards spent some time at the islands."

The rulings and instructions of the Judge of the C. C. Pleas are given in the opinion of the Court. The jury returned a verdict for the defendants, and found that *Dix Island* was not within *the town of St. George*, and that the pauper acquired a new settlement in *Thomaston* by five years residence successively, *commencing in the fall of* 1829. The plaintiffs excepted to the rulings and instructions of the Judge.

*F. Allen*, and *H. C. Lowell*, argued for the plaintiffs, and contended that *Dix Island* was not within the limits of *Thomaston*, but was a part of *St. George ;* that as the line between *Thomaston* and *St. George*, extended out to sea, would leave *Dix Island* on the *St. George* side *;* and as the island was within three miles of the main land, it was included within the limits of *St. George*. The fact therefore that the island is nearer some point of the main land of *Thomaston*, than to any one in *St. George*, is wholly immaterial. The Judge erred in refusing to give the first instruction requested. On this point they cited the act incorporating the county of *Lincoln* in 1760 ; that incorporating *Thomaston* in 1777 ; that incorporating *Cushing* in 1789 ; that incorporating *St. George* in 1803 ; *Case of the Ann*, 1 *Gallison*, 62, to show the meaning of the word *adjacent* in the acts of incorporation ; *Church* v. *Hubbart*, 2 *Cranch*, 187 ; *Vattel*, 191.

The instruction on the subject of gaining a settlement by five years continued residence was wrong. During the life of her husband, the pauper could gain no rights by residence, and could have a settlement only derivatively from her husband. *Shirley* v. *Watertown*, 3 *Mass. R.* 322 ; *Winchendon* v. *Hatfield*, 4 *Mass. R.* 123 ; *Hallowell* v. *Gardiner*, 1 *Greenl.* 101 ; *Biddeford* v. *Saco*, 7 *Greenl.* 270 ; *Athol v. New Salem*, 7 *Pick.* 42.

*J. Holmes* argued for the defendants, and on the first point urged that *Dix Island* could not belong to *St. George* unless included

under the term of *islands adjacent;* that it could not be considered *as adjacent* to *St. George,* because it was nearer the main land of *Thomaston;* that this was not a question for the decision of the Judge, but of the jury; that the jury had decided the question rightly, but whether they were right or wrong, could not be the subject of inquiry now, on a case coming up on exceptions.

The pauper acquired a settlement in *Thomaston,* be *Dix Island* in what town it may, by five years continued residence in that town, commencing in the fall of 1829. She had a home there, and when once acquired, the home is not lost, until another is obtained. Hence declarations of an intention of abandonment, accompanied with the act of removal, is imperfect until another domicil is acquired. *Jennison* v. *Hapgood,* 10 *Pick.* 72, 100 ; *Wells* v. *Kennebunk,* 8 *Greenl.* 200 ; *Waterborough* v. *Newfield,* 8 *Greenl.* 203 ; *St. George* v. *Deer Isle,* 3 *Greenl.* 390. She in fact returned to *Thomaston* as her home, and she never lost it by her temporary absence. While with her son, she was but a visiter. It was his home, not hers.

Nor does the fact that she had a husband during a portion of the time living with her there, prevent her from gaining a settlement in *Thomaston.* She comes within the words of the act, and completely within its meaning. She was twenty-one years of age, and resided there five years. He commented on the several cases cited for the plaintiffs, and contended they had no application here. Not only was this the home of the wife, but her only home; and she is not like the slave, without will of her own, and it is peculiarly the province of the wife to fix upon a home. Besides, she can elect, after her husband's death, to continue that her home, and then her election is retroactive, and extends back to her first coming there.

The opinion of the Court was drawn up by

Emery J. — The Judge was requested to instruct the jury, "if they should find *Dix Island* was within three miles of the main land, that it was in that case embraced within the limits of the town of *St. George,* although it might be nearer to some point in *Thomaston.*" This he declined, but did instruct them, " that by the act incorporating *St. George,* the islands adjacent thereto were

made a part of that town; that whether *Dix Island* was within the meaning of that act, adjacent to *St. George,* and therefore a part of that town, they should judge from all the evidence adduced."

It is true, that there is presented a mixed question of law and fact. " The town of *Thomaston* was formed from a part of the *St. George* plantation, *including all islands within three miles of the main land, and* WITHIN THE DIRECTION OF THE LINES THAT RUN TO THE SEA." The act incorporating the town of *Cushing,* passed on *Jan.* 28, 1789, declares, that the plantation heretofore called *St. George's,* in the county of *Lincoln,* as described in the following boundaries, beginning at the mouth of *Meduncook River,* running up said river to the head of the tide, then north by east to *Waldoborough* line, then along said line to the southwest corner of *Warren,* then running easterly by *Warren* line to *St. George's River,* then crossing said river to the southwest corner of *Thomaston,* then east-southeast by *Thomaston* line to the sea shore to *Herringut,* thence running northwesterly, crossing *St. George's River,* to the first mentioned bounds, with the adjacent islands, together with the inhabitants, are incorporated into a town, by the name of *Cushing.* *Thomaston* it seems, had previously been incorporated.

The statute passed *Feb.* 7, 1803, enacts, that all that part of the town of *Cushing,* which lies to the eastward of a line, drawn from the southwest corner of *Thomaston,* and passing southwesterly through the middle of *St. George's River* by the westerly channel to the sea, be and hereby is incorporated into a separate town by the name of *St. George.* Of course the *Dix Island* was once a part of the town of *Cushing.*

The ship channel for vessels bound to and from *Penobscot* bay and river is between *Dix* island and the main land of *Thomaston,* and the main land of *St. George.* Had nothing been said in either of the acts of incorporation of the three towns of *Thomaston, Cushing* or *St. George,* leading to the adoption of a mode of ascertaining the intentions of the legislature, as to islands to appertain to each in the use of the term *adjacent,* it would not be an unnatural one, to carry out the line of the town of *Thomaston* from its southwest corner into the ocean, in order to ascertain what were the adjacent islands, which should be attached to *St. George.* Considering that

*Thomaston* includes all islands within three miles of the main land, *and within the direction of the lines that run to the sea,* thus making not only distance from the main land, but direction of lines of the town, essential to ascertain its islands, and the law detaching *St. George* from *Cushing,* says, that all that part of the town of *Cushing* which lies east of the line running from the southwest corner of *Thomaston,* with the islands adjacent, shall constitute the town of *St. George,* and by the plan exhibited, this *Dix Island* is eastward of the territory or main land of *St. George,* and within the line so extended, it appears to us, that the finding of the jury, that *Dix Island* is not within the town of *St. George,* is manifestly opposed to the law.

Though *Dix Island* may be nearer to the main land of *Thomaston,* than to the main land of *St. George,* yet it is nearer to the line so extended, *and without the direction of the lines of Thomaston that run to the sea,* and may fairly, even necessarily, be adjudged to be *adjacent* to *St. George,* within the meaning of the act incorporating *St. George.* Entertaining this opinion, we apprehend that the first requested instruction might well have been given.

We perceive no error in the direction of the Judge, that the jury " were to gather the intentions of the pauper, as to a change of domicil, from her declarations, which were not conclusive evidence on that point, and from her acts, all taken in connection." The subject was placed precisely as it should be for the contemplation of the jury. The declaration might have been the result of some hasty feelings, or impressions, and even though accompanied by the removal of her bed, her all, still, there might well be indulged to her the liberty of more calm deliberation. It was left open for the mature weighing by the jury of all the circumstances in evidence.

It has been gallantly said, that " it is peculiarly the wife's province to fix upon a home." Doubtless she may have wonderful influence in rendering the place of her selection a pleasant home, and her advice as to the choice is seldom to be disregarded. In a peculiar case, under the law of the Commonwealth of *Massachusetts,* as it was in 1794, and for some time after, there was some ground for the suggestion of the defendants' counsel. If a woman, having a settlement in that Commonwealth, married a man having

no such settlement, hers, by law, was not lost or suspended by marrying, and in case the wife were removed to her settlement, the husband, if he needed support, was to receive it in the town where his wife had her settlement, at the expense of the Commonwealth. She would in such a concurrence of events "fix the home." *Feb.* 11, 1794, *stat. c.* 34.

It is also insisted, " that she can elect after her husband's death to continue the residence, and then her election is retroactive," and strong cases of illustration of the justness of this reasoning drawn from highly wrought sentiments or reminiscences of affection, have been adduced, and eloquently urged upon us, with persuasive and interesting effect. But the law seems not to have been framed exactly upon those considerations, nor has it been so expounded. It was long ago held, that a wife was incapable of gaining a settlement in her own right. Her will is subjected to the husband's judgment. She will follow and have the settlement of her husband, as it was at his death. But she is not permitted to tack the portion of her *residence with her husband* in a town, which had not been long enough to fix his settlement there, to additional time of her own residence there, after his decease, to procure a settlement for herself. In legal construction, while united to her husband, she had no volition, by which she could make an election of her home. As death severs the connexion, she is left to abide by what his settlement was, with the leave of beginning to find another for herself. And in the case of the inhabitants of *Richmond* against the inhabitants of *Lisbon*, this Court so decided. 15 *Maine R.* 434.

The presumption of law does not arise in favor of the continued residence and home " until it should be shewn that she acquired a new residence and home in some other place." Because upon the husband's *failing* to gain a settlement in *Thomaston*, by five years continued residence and having *his home* there, his wife or widow, on the instant of his death is, as it were remitted* to the original settlement, which she had derivatively from her husband, and that settlement, in this instance, was in *St. George*.

---

* A remitter is as an entry in law. There may be a remitter, *nolens volens*, for the benefit of third persons. *Duncombe* v. *Wingfield, Hobart*, 254.

The instruction therefore, that, "if it was not shewn, that she did obtain such a new residence and home within five years from the time when the residence commenced in *Thomaston*, in the fall of 1829, her settlement was in *Thomaston*" was erroneous, and for this also the exceptions must be sustained. The verdict must be set aside and a new trial granted.